UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-20423-CR-SCOLA/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NEPMAR JESUS ESCALONA,

    Defendant.

_____/

### ORDER DENYING DEFENDANT'S MOTION *IN LIMINE*

Nepmar Jesus Escalona ("Escalona" or "Defendant") is charged by indictment with one count of conspiracy to launder monetary instruments, in violation of Title 18, United States Code, Section 1956(h). [ECF No. 10]. The conspiracy charged in the Indictment spans "[f]rom in and around January 2010, through on or about September 18, 2017." *Id.* at 1. The Government describes "the crux of the charged scheme" as "an agreement by [ ] [D]efendant and at least six government witnesses to fraudulently obtain permits from the Venezuelan government to wire transfer over $116 million to the United States, Switzerland, and Hong Kong under the guise of being payments for food imports to Venezuela that in reality, rarely took place." [ECF No. 36, p. 2].

The Government intends to "introduce evidence at trial demonstrating that [ ] [D]efendant had accepted bribes from co-conspirators for approximately ten years prior

to the charged conspiracy" and "evidence . . . that . . . [D]efendant committed separate, uncharged acts of fraud and money laundering during and after the conspiracy period." *Id.* at 1. The Government filed a "notice of its intent, pursuant to Federal Rule of Evidence 404(b) and Local Rule 88.10(h), to introduce evidence of other crimes, wrongs, or acts by [ ] [D]efendant that are [purportedly] relevant in this case as proof of motive, opportunity, intent, plan, knowledge, identity, absence of mistake or lack of accident[.]" *Id.*

Escalona filed the instant motion *in limine*, seeking to exclude evidence of approximately ten years of uncharged conduct (i.e., evidence offered under Federal Rule of Evidence 404(b)). [ECF No. 38].

United States District Judge Robert N. Scola, Jr. referred the instant motion to the Undersigned. [ECF No. 41]. The Undersigned held a hearing on April 11, 2023 and the parties filed post-hearing legal memoranda. [ECF Nos. 50–51].

For the reasons outlined below, the Undersigned **denies** Defendant's motion. However, these rulings are not automatically binding on Judge Scola, who, as the trial judge, has the discretion to rule differently, especially if the evidence presented at trial appears to be different from the manner in which the parties have portrayed it here.

Moreover, although the Undersigned is denying the motion, this Order also provides some potential relief concerning the United States' *Brady*[1] obligations. More on that later.

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

## I. Evidence of Uncharged Criminal Conduct

The Government intends to introduce "evidence that prior to the conspiracy's commencement in and around January of 2010, [ ] [Escalona] had already been organizing and receiving bribes from Co-conspirators # 1 and # 2 and others in exchange for facilitating the smuggling of untaxed goods into and around Venezuela." [ECF No. 36, p. 3]. Specifically, the United States intends to offer evidence that: (1) "for approximately ten years immediately prior to the conspiracy, [ ] Co-conspirators # 1 and # 2 [ ] paid and relied upon [ ] [D]efendant to arrange for textile goods to move via truck, train, and air transportation without proper customs and other government inspection"; (2) "that payments were often delivered to [ ] [D]efendant and his associates in person and in cash"; and (3) that Defendant's family "commit[ed] bank fraud, wire fraud, and money laundering" in order "to move, conceal, and spend the proceeds of the charged money laundering conspiracy" by "transfer[ring] of millions of dollars to bank accounts in Switzerland and the United States, as well as . . . purchas[ing] [ ] real estate in the Southern District of Florida." *Id.* at 4.

In its post-hearing memorandum [ECF No. 50], the Government provided additional details about the evidence it intends to introduce at trial:

The Government asserts that Co-conspirator # 1, Co-conspirator # 2, and Co-conspirator # 3 "will testify about their initial introduction to [Escalona] and the development of their corrupt business relationships." *Id*. at 1.

Co-conspirator # 2 will testify about his business in Venezuela, that in approximately 2002, Escalona used his position as a Venezuelan public official to seize a shipping container intended for Co-conspirator # 2's business, that Co-conspirator # 2 made a cash payment to Escalona in exchange for the release of the goods in the shipping container, and that Co-conspirator # 2 continued to make payments to Escalona to ensure the delivery of subsequent shipments. *Id.* at 2. Co-conspirator # 2 will also testify about "[D]efendant [becoming] an investor and partner in Co-conspirator #2's shipments in lieu of receiving bribes" and how "[D]efendant protected the goods from being inspected by other [Venezuelan] government officials while no proper taxes or levies were paid on the goods" and "split the illicit profits evenly from these imports." *Id.* at 2-3.

Co-conspirator # 1 will testify that in or about 2005, Co-conspirator # 2 introduced Escalona to him/her "as someone in the National Guard who would accept, and had already accepted, bribes in exchange for helping to import and protect goods." *Id.* at 3.[2]

The Government intends to introduce this testimony and other evidence to show "that three of the conspirators came to know [ ] [D]efendant through [ ] [D]efendant's abuse of authority as a member of the Venezuelan National Guard." *Id.* at 4.

---

[2] The Government's post-hearing memorandum also discusses Co-conspirator # 3's anticipated testimony, which concerns events occurring in approximately 2012, *during* the period charged in the Indictment. [ECF No. 50, p. 3].

4

## II. The Parties' Contentions

The Government's position is that this evidence is "'inextricably intertwined' intrinsic evidence that is relevant to the determination of [ ] [D]efendant's participation in the charged conspiracy." [ECF No. 36 at 3 n.1]. It argues that this "evidence is relevant to the charged scheme and should be allowed at trial because it completes the picture of how the conspiracy began." [ECF No. 50, p. 4].

Alternatively, and "in an abundance of caution," the Government asserts that this evidence "could [also] be admitted" under the exceptions listed in Rule 404(b) "as extrinsic acts of wrongdoing" to "illustrate proof of motive, opportunity, intent, plan, knowledge, identity, absence of mistake, and lack of accident." [ECF No. 36 at 3 n.1].

In his post-hearing memoranda, Escalona argues that neither he nor the Court has "received proper 404(b) notice." [ECF No. 51, p. 4]. He notes that a local rule in another district (the Southern District of *Georgia*) requires the Government to provide "written notice of any direct or circumstantial evidence of other crimes, wrongs, or acts of the defendant" no later than 20 days after the arraignment. *Id.* at 3 (citing L.R. S.D. Ga. 16.2). Escalona also takes issue with the lack of detail provided by the Government.

He notes that, in the instant case, the Government filed its notice of intent almost six months after the Indictment and did not discuss "specific instances of conduct" until the April 11, 2023 hearing. *Id.* at 4. Escalona also argues that "[i]t is unrealistic, and unfair to the defense investigation or preparation, to allow introduction of material that it [sic]

5

not detailed in date or action." *Id.* at 5.

### III.   Analysis

The Eleventh Circuit has explained that:

> evidence of criminal activity other than the charged offense **is not "extrinsic" under Rule 404(b)**, and thus falls outside the scope of the Rule, **when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."** *United States v. Baker*, 432 F.3d 1189, 1205 n. 9 (11th Cir. 2005) (quoting *United States v. Veltmann*, 6 F.3d 1483, 1498 (11th Cir. 1993)). **"Evidence, not part of the crime charged but pertaining to the chain of events explaining the <u>context, motive[,] and set-up of the crime</u>, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to <u>complete the story of the crime for the jury</u>."** *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998). And evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an **"integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted."** *United States v. Foster*, 889 F.2d 1049, 1053 (11th Cir. 1989).

*United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (emphasis added).

Here, evidence that Escalona accepted bribes from Co-conspirator # 2 in exchange for ensuring that shipments would not be seized by Venezuelan authorities and that Escalona was introduced to Co-conspirator # 1 as someone who had accepted bribes and would accept bribes in order for goods to reach their destination "is necessary to complete the story of the crime for the jury and forms an integral and natural part of an account of the crime." *United States v. Trujillo*, No. 21-CR-20303-DPG, 2023 WL 2989085, at *2 (S.D. Fla. Apr. 18, 2023) (finding evidence of a defendant's earlier participation in an insurance

6

fraud scheme to be admissible as "inextricably intertwined with the evidence regarding the charged Medicare bust-out and money laundering schemes" and also admissible under Rule 404(b)).

At bottom, the evidence shows how and why Defendant became involved in bribery concerning port shipments. It provides a logical backdrop about how and why the United States believes Defendant became involved in the charged conduct. Therefore, the evidence at issue is *intrinsic* to the charged offense.

Assuming, for the sake of argument, that the evidence is extrinsic (and the Undersigned does not believe that it is, for the reasons discussed above), the evidence is nonetheless admissible under Rule 404(b). The admissibility of acts unrelated to the present litigation hinges on three factors: the evidence must (1) be relevant to one of the enumerated issues and not to the defendant's character; (2) the evidence must be proved sufficiently to permit a jury determination that the defendant committed the extrinsic act; and (3) the evidence's probative value cannot be substantially outweighed by its undue prejudice, and the evidence must satisfy Rule 403. *Edouard*, 485 F.3d at 1344.

All three prongs are met here. The uncharged conduct is relevant to the issues in this case. At the very least, it explains how and why Escalona became involved in the bribery scheme and is relevant to show his knowledge, motive, and intent.

The second prong is satisfied if "a jury could find by a preponderance of the evidence that the defendant committed the act." *United States v. Griffin*, 783 F. App'x 881,

884 (11th Cir. 2019) (citing *Edouard*, 485 F.3d at 1345). Here, the Government intends to introduce testimony from "at least three co-conspirators" and "[a] federal officer from the United States Drug Enforcement Administration ('DEA') will testify that [ ] [D]efendant corroborated certain details during voluntary interviews with the DEA." [ECF No. 50, pp. 1-2]. Based on this proffered evidence, the second prong is satisfied.

"Under the third prong, [the Court] conduct[s] a Rule 403 analysis to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Griffin*, 783 F. App'x at 884 (citing *United States v. Barron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016)).

Escalona argues that "[t]his evidence will be substantially more prejudicial than probative, and risks converting what would otherwise be a relatively short trial into a confusing trial about numerous uncharged wrongful acts." [ECF No. 38, p. 3]. But the evidence the Government seeks to introduce will not result in a side trial or divert the issues. It will help fill in the gaps and paint a more-complete picture for the jury of Escalona's relationship with the co-conspirators. And, the details provided by the Government (including in its post-hearing memorandum, ECF No. 50) are sufficient to provide notice to Escalona under Rule 404(b). *See United States v. Lampley*, 68 F.3d 1296, 1300 n. 4 (11th Cir. 1995) ("The [G]overnment must only provide notice of the **'general**

8

**nature'** of the extrinsic act evidence." (citing Fed. R. Evid. 404(b) (emphasis supplied)).[3]

Lastly, the evidence of uncharged criminal conduct is not too remote in time. The Eleventh Circuit has "rejected attempts to draw a bright line establishing when prior bad acts are too remote to be probative." *United States v. Louijuste*, 517 F. App'x 916, 919 (11th Cir. 2013). The appellate court has found no abuse of discretion in admitting past conduct which exceeds ten years. *See, e.g.*, *Lampley*, 68 F.3d at 1300 (finding no abuse of discretion in admitting evidence which was approximately 15 years old); *United States v. James*, 147 F. App'x 76, 81 (11th Cir. 2005) (finding no abuse of discretion in admitting into evidence conviction which was approximately 16 years old). Moreover, some of the evidence the Government seeks to introduce is more recent. Co-conspirator # 1 intents to testify about events which occurred in approximately 2005 (five years before the start of the charged conspiracy) and Co-conspirator # 2 is expected to testify about events in approximately 2002 (eight years before the charged conspiracy). *See, e.g.*, *United States v. Pessefall*, 27 F.3d 511, 516 (11th Cir. 1994) (finding no abuse of discretion in admitting act which occurred

---

[3] Although the United States sometimes makes Rule 404(b) disclosures with information about specific dates and names, especially if the prior act is a one-time event at a specific location, this level of detail is not required. *See United States v. Stoecker*, 920 F. Supp. 876, 882–83 (N.D. Ill. 1996) (Rule requiring prosecution to provide defendant with reasonable notice of general nature of "other crimes" evidence it intends to introduce **does not require such specificity as disclosure of exact dates, times, places, and persons** involved in acts, statements of persons involved, or all documentary evidence related to other acts); *United States v. Jackson*, 850 F. Supp. 1481, 1493 (D. Kan. 1994) (Notice of intent to use prior bad acts evidence **need not provide precise details regarding date, time, and place of prior bad acts**, but it must characterize prior conduct to degree that fairly apprises defendant of its general nature).

approximately eight years before the charged offense).

Defendant cites *United States v. Sanders*, 668 F.3d 1298, 1315 (11th Cir. 2012) to support his view that the uncharged acts are too old and concern an overly lengthy time span. But *Sanders* is factually distinguishable and therefore not particularly helpful. *Sanders* involved a 22-year-old, 1.4 gram marijuana conviction used in a prosecution involving an international narcotics conspiracy to traffic 153 kilograms of cocaine. As the appellate court explained, the Rule 404(b) evidence of the minor marijuana conviction involved a "lengthy time span" (i.e., 22 years), "extremely disparate amounts of different drugs" and "materially different roles in the offense." *Id.*

In Escalona's case, there is a more-modest time span, the same type of criminal activity, the same role in the offense and myriad transactions (as opposed to one minor, isolated event). Based on the circumstances of this case, and in light of the evidence the Government seeks to introduce, the Undersigned does not find evidence stemming as far back as ten years from the charged conspiracy to be too remote.

In sum, the evidence the Government seeks to introduce is intrinsic evidence. It is also admissible under Rule 404(b). Defendant's motion *in limine* is **denied**.[4]

Nonetheless, the Undersigned agrees with Defendant's position concerning the

---

[4] The Undersigned notes that Judge Scola is not bound by this *in limine* ruling and may revisit it at trial. *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (noting that *in limine* rulings are "not binding on the trial judge, and the judge may always change his mind during the course of the trial").

United States' discovery obligations arising from its concession that some of the prior shipments, not involved in the charged offense, were valid. To be sure, the United States describes the valid transactions as "rare," but these valid transactions must be disclosed to Defendant by May 1, 2023 as part of the Government's *Brady* obligations. If the United States knows only some of the circumstances of the valid transactions, then it shall disclose the specifics of what it knows and note that certain aspects are not known. The mere fact that the legitimate shipments may be atypical or rare does not render inapplicable the *Brady* requirement.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on April 25, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All counsel of record