UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.                             CASE NO: 22-20423-CR-SCOLA/GOODMAN

NEPMAR J. ESCALONA,

    *Defendant*.

_____/

## MOTION FOR DOWNWARD VARIANCE

Defendant Nepmar J. Escalona ("Mr. Escalona"), through his undersigned attorney, pursuant to Rule 32, Fed. R. Crim. P. and 18 U.S.C. § 3553(a), hereby submits his motion requesting a downward variance from the bottom of his sentencing guidelines range.

### I. INTRODUCTION

On September 7, 2022, Mr. Escalona was indicted and charged in a one count indictment with money laundering conspiracy in violation of 18 U.S.C. § 1956(h). Subsequently, on March 4, 2024, He pled guilty to the conspiracy to money laundering count pursuant to a plea agreement. DE #93. Thereafter Mr. Escalona provided all information required for the preparation of his Presentence Report ("PSR"). The initial copy of the PSR was received on April 19, 2024. After examining the PSR, Mr. Escalona has no objections to the factual content or the guidelines calculations. He now files his motion for a downward variance in accordance with § 3553(a).

### II. MR. ESCALONA MERITS A § 3553(a) FACTORS DOWNWARD VARIANCE

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court explained that the Sentencing Guidelines serve as a "starting point and initial benchmark," but the district court has authority, based on its "individualized assessment" of the facts, to weigh the factors listed in

section 3553(a) and fashion a sentence outside the guidelines. *Id*. at 49-51. After the guidelines calculations are determined "the District Court may impose a more severe or more lenient sentence as song as the sentence is reasonable." *United States v. Crawford*, 407 F.3d 11174, 1179 (11th Cir. 2005). The sentencing judge must "'consider every convicted person as an individual and every case as a unique study in [] human failings.'" *Id*. at 52 (quoting from *Koon*, 518 U.S. at 113.) The goal is to impose a sentence that is reasonable, meaning that is sufficient, but not greater than necessary. *See* §3553(a). [1]

In Mr. Escalona's case, a strict application of the advisory guidelines produces a sentence that is "greater than necessary" under the § 3553(a) factors. And the § 3553(a) factors tilt in his favor and warrant a sentence below the guidelines for the reasons discussed below.

    **(a) Discussion of the 18 U.S.C. § 3553(a) factors**

    *(1) The Nature of the Offense and History and Characteristics of the Defendant*

        *(a) Characteristics of the Defendant*

---

[1] § 3553(a) provides the following seven factors that the court must consider in determining the particular sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for … [inapplicable categories of offenses to the instant case];
(5) any pertinent policy statement …[none applicable to the instant case];
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

**JOSE M. QUIÑON, P.A.**
75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com

Mr. Escalona is a first-time offender. This is his only encounter with the criminal justice system. He was born in Venezuela and became a U.S. citizen after he emigrated to the United States in 2013. He came to the U.S. with his wife, Blanca Carolina Diaz, and his daughter and son. The daughter, Amanda, is 25 years old and is presently studying in Spain for a master's degree in the area of human reproduction. And the son, Carlos, is 18 years old, resides with his parents, and is completing second year of college and then will finish the last two years at Florida International University. Mr. Escalona's father, Neptaly Escalona, age 78, and his mother, Rosario Escalona Enriquez, age 73, are alive and live in Chile. The parents used to live in Venezuela but had to move to Chile because of collateral consequences related to this case, which will be explained at the sentencing hearing. As can be gleaned from the PSR, this is a close family, where Mr. Escalona and his wife enjoy an "excellent" relationship and their children have shown a desire to get ahead in school and appear to be on their way to being productive members of the community. In sum, Mr. Escalona is blessed that he's loved and supported by a united and loving family.

Mr. Escalona, after graduating high school, entered a military institute; that is, an officer training school that provided the equivalent of a college degree, but some of the studies focused on military history, skills, and strategy. He also obtained a master's degree from Universidad Santa Maria. After his studies, he served honorably in the Guardia Nacional of Venezuelan for 15 years. For personal and family reasons, Mr. Escalona thought it would be a better future for him and his family if he resigned his position in the Guardia Nacional and dedicated himself full-time to the business of importing and exporting fruits and goods. In fact, prior to his resignation from the Guardia Nacional, he had already been involved for years in the business of importing and exporting fruits (e.g., apples, pears, etc.) from Chile directly to Caribbean countries and from United States to Venezuela.

(b) *Nature of the Offense*

The nature of the offense is described in the PSR in ¶¶ 14-21, and concededly it is a serious offense. However, additional context regarding the circumstances surrounding the offense will be provided at the sentencing hearing that we believe will incline the Court to grant Mr. Escalona's motion for downward variance.

(2) *The Purpose of Sentencing (Retribution, Deterrence, and Rehabilitation)*

It is conceded that retribution, deterrence, and rehabilitation are factors the Court must consider for sentencing purposes. They play a role in formulating an appropriate sentence. But in arriving at an appropriate sentence, the Court must weigh all the § 3553(a) factors together in order to impose a sentence that is "sufficient but not greater than necessary."

Mr. Escalona has already absorbed much pain and suffering because of his arrest and prosecution in this case. The emotional and financial consequences have been devastating. For the first time in his life, Mr. Escalona has had to dig deep into his soul to reexamine his actions and determine how and went he abandoned his principles code, and how in the process he ended up violating the laws of the United States. This has been a painful process that has led to the realization that he has failed in upholding all the valuable principles instilled in him by his parents, failed his wife and children who for so long have admired him for doing things the right way, failed his friends as well, who always thought so highly of him, and failed his community who saw him as someone worthy of admiration. In sum, Mr. Escalona has been emotionally devastated by the realization that he has brought about so much burden and misery upon himself and those he loves the most. And now, he seeks a chance to rebuild his life and, hopefully, regain some self-respect, something that's truly important to move forward with his life.

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

From a financial perspective, Mr. Escalona has also brought nothing but misery to himself and his family. He has not been able to work since his arrest. As part of his bail conditions, he has been confined to his home, under GPS electronic monitoring since September 1, 2022. So, for almost two years, he has not produced any income at all. Instead, he and his family have lived (on a government approved) monthly allowance. The allowance money is drawn monthly from a bank account where the sale proceeds of the family home in Hollywood, Florida had been deposited. Compounding his misfortune, Mr. Escalona had to pay a significant amount to two previous lawyers who represented him during much of the time the case was pending and pay a significant amount to his present lawyer as well. These payments to attorneys, investigators, and collateral expenses have considerably diminished the family's savings. Also, as part of the plea agreement, Mr. Escalona will pay at the time of sentencing $841,694.88, which represents *double* the amount of the required restitution. To make this payment, Mr. Escalona was forced to sell some family property that was originally intended to provide income during the retirement years. And the road ahead for Mr. Escalona doesn't get easier because he will have to find a way to provide for his family in the future while carrying the heavy burden of a tattered reputation and being a convicted felon. A crushing punishment by any measure.

Anyone with knowledge of the difficult circumstances surrounding Mr. Escalona's life would agree that he has suffered immensely as a result of the offense. And more shame and punishment will come his way the day of sentencing, when he will stand before the Court, something that was unthinkable at a point in his life. That day, at sentencing, at stake will be his liberty, his self-dignity, the shame of facing the consequences of his own selfish actions, and countless things that will undoubtably swirl through his mind.

Additional consequences reflecting retribution and deterrence will be presented at the sentencing in a more private and proper setting.

### (3) The Kinds of Sentences Available

Section 3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, but not greater than necessary." As Judge Rakoff pointed out in *United States v. Adelson*, 441 F. Supp.2d 506, 515 (S.D.N.Y. 2006), the operative word in § 3553(a) is "necessary." For that reason, it's important to seek a sentencing option that is not more punitive than necessary when taking into account all the § 3553(a) factors. The Court here may consider options beyond strict imprisonment, such as the use of home detention, probation, or community service to fashion an appropriate sentence.

In this case, if the Court decides that strict imprisonment is the most appropriate sentence, we suggest a sentence of a year and a day of imprisonment,. Or, if the Court decides a more appropriate disposition is a split sentence, we suggest a sentence consisting of a shorter period of imprisonment (e.g., six months) and home confinement. It's worth mentioning that Mr. Escalona has already served almost two years of home confinement, without any incidents, and this curtailment of rights and freedoms also should receive some consideration in fashioning a sentence in this case.

### (4) and (5) The Advisory Sentencing Guidelines and Policy Statements

These two sections speak to policy matters that are not specifically directed at the issues pertinent to this case.

### (6) The Need to Avoid Unwarranted Sentencing Disparities

Mr. Escalona is the only individual indicted here, albeit some others could have been, but were not. So, the issue of sentencing disparities is not presented.

Page **6** of **9**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

### *(7) The Need to Provide Restitution to Any Victims of the Offense*

This case does not call for restitution, but it does involve forfeiture. These two separate and distinct legal remedies seem to travel together and frequently in white-collar cases. The case law and sentencing guidelines permit downward departures for extraordinary restitution, and we respectfully submit a like concession should occur as to exceptional forfeiture payments, which go beyond those the law requires.

It is well-established law in this Circuit that extraordinary restitution is a permissible basis for a downward Sentencing Guidelines' departure. *United States v. Kim*, 364 F.3d 1235 (11th Cir. 2004). The Court may grant a downward departure "'*if the factor [restitution] is present to an exceptional degree or in some other way makes the case different from the ordinary case*.'" *Id*. at 1240 (quoting *Koon v. United States*, 518 U.S. 81, 95-96 (1996) (emphasis added). *See also*, *United States v. Anderson*, 267 Fed. Appx. 847 (11th Cir. 2008) (on petition for rehearing) (affirming the district court's sentence of three years' probation and six months home detention because the defendant made prompt, pre-sentence restitution; despite that the guidelines recommended 18 to 24 months incarceration and the defendant had committed 18 insider trading transactions with profits of $135,000).

Here, Mr. Escalona is not required to pay restitution, but he must pay forfeiture. He will pay the day of sentencing $841,694.88 for forfeiture, which translates to *double* the required amount. We submit this voluntary payment is extraordinary and constitutes an exceptional effort to atone for, or remedy, the harm caused by the offense – and it merits the granting of a downward variance.

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

## CONCLUSION

Mr. Escalona is an individual deserving a second chance. His kindness and great qualities can be garnered from four character letters submitted on his behalf: (*) Exhibit "1," is a letter from FUNDASE, a non-profit foundation in Venezuela attesting that Mr. Escalona volunteered his services for 10 years to that foundation with the aim to "develop, promote, and protect the best living conditions for disabled people, homeless individuals, children, adolescents, and abandoned elderly people, low-income individuals, pregnant women at risk, providing them with support, shelter, food, education, Christian teachings …"; (**) Exhibit "2," is a letter from the Archdiocese of Valencia, Venezuela, attesting that Mr. Escalona was a faithful parishioner in that Catholic church community while living in that community; (***) Exhibit "3," is a letter from Margarita Vare Sanchez, who expresses her gratitude in being able to thank Mr. Escalona for his financial help and moral support during 10 difficult years while her mother battle serious medical complications; and (****) Exhibit "4," a letter from Katiuska Elena Rodriguez Pinto, who Mr. Escalona helped to pay for medical expenses incurred when she gave birth to prematurely born twins, and the funeral expenses for the one who unfortunately passed. These letters put things in perspective the kindness, humanity, and goodness within Mr. Escalona. And we respectfully submit a downward variance is merited for this man, who through his actions has demonstrated he deserves it.

Respectfully submitted,
*s/Jose M. Quinon*
Jose M. Quinon

JOSE M. QUINON, P.A.
75 Valencia Avenue, Suite 800
Coral Gables, Florida 33134
Tel. (305) 858-5700
Fax (305) 358-7848

Page **8** of **9**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*

Cell (786) 348-3778
Email: jquinon@quinonlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Defendant Nepmar Escalona's Motion for Downward Variance was filed on May 2, 2024, via PACER, which will serve a copy on all concerned parties.

*s/Jose M. Quinon*
Jose M. Quinon

Page **9** of **9**

**JOSE M. QUIÑON, P.A.**
*75 Valencia Avenue, Suite 800, Coral Gables, FL 33134 Tel. (305) 858-5700. Fax (305) 358-7848 jquinon@quinonlaw.com*